UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY A. COVINGTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>) No. 1:12-cv-00802-DKL-WTL<br>MICHAEL J. ASTRUE Commissioner of )<br>the Social Security Administration, )<br>)<br>Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Jeffrey A. Covington ("Covington") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"),[1] denying Covington's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability benefits. For the reasons set forth below, the Commissioner=s decision is **AFFIRMED.**

### I.   BACKGROUND

#### A.  Procedural History

Covington filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on December 30, 2008, alleging an onset of disability of June 15, 2008. [Dkt. 14-2 at 914.] Covington's applications were denied

---

[1] Carolyn W. Colvin became the Acting Commissioner of the SSA on February 14, 2013, while this case was pending. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for the former Commissioner Michael J. Astrue.

initially on March 20, 2009, and upon reconsideration on July 23, 2009. [Id.] Covington requested a hearing, which was held on April 15, 2011, before Administrative Law Judge Monica LaPolt ("ALJ"). The ALJ denied Covington's application on May 23, 2011. [Dkt. 10-2 at 6.] The Appeals Council denied Covington's request for review of the ALJ's decision on May 11, 2012, making the ALJ's decision final for purposes of judicial review. Covington filed his Complaint with this Court on June 12, 2012. [Dkt. 1.]

### B. Factual Background and Medical History

Covington was born in 1961 and was 46 years old on the date of alleged onset of disability. He has a ninth grade education and past relevant work as a fast food cook, stock clerk, assistant manager, construction worker, janitor and machine feeder.

#### 1. Back Impairment

The medical evidence reflects that Covington has experienced low to mid back pain for several years. In February 2009, Covington went to the emergency room with complaints of left shoulder pain that extended into his upper thoracic area. He complained of similar pain at a follow-up visit with his primary care physician in May 2009. A chest X-ray showed no abnormalities and the doctor recommended physical therapy. There are no documents establishing that Covington followed through with the recommendation.

In August 2009, Covington again visited the emergency room for mid to low back pain. He reported that he was using a TENS unit with no relief. Covington rated his pain a ten out of ten and requested pain medication. His primary care physician

noted that narcotic pain medication would not be appropriate. At his September 2009 visit, the primary care physician also noted that Covington was ambulatory without an assistive device and the physical and X-rays were negative.

In January, February and March 2009, Covington visited the emergency room after fainting episodes. An X-ray, CT scan and EEG demonstrated normal findings. In May 2010, Covington attended a vocational assessment at the VA. He reported intermittent back pain that rated a two out of ten for pain. In October 2010, was evaluated by his primary care physician for back pain. An X-ray showed mild degenerative disc disease. Covington's physician again noted that narcotic pain medication was not a good choice and recommended physical therapy.

### 2. Vision Impairment

Covington also alleges a loss of vision in his right eye. As a child, Covington had surgery for congenital esotropia, a condition where the eyes are not properly aligned. In September 2007, Covington visited the eye clinic at the VA hospital following an accident where hot grease splattered into his right eye. In June 2008, Covington continued to experience negative side effects from the thermal injury to his eye including photophobia (light sensitivity) and blepharitis (chronic inflammation). In December 2008, Covington complained of pain and light sensitivity to his optometrist. Covington's corrected vision was tested at 20/50 in the right eye and 20/20 in the left. On October 28, 2010, Covington underwent a bilateral recession of the lateral rectus muscles in his eyes to alleviate the esotropia. Covington reported in December 2010

that he was doing well post-surgery and his eye felt straighter. At the hearing, Covington testified that he has trouble with his peripheral vision.

### 3. Mental Impairments

The medical record reflects Covington regularly visited the VA psychiatric clinic for treatment. At various times he was diagnosed with the following conditions: major depression, posttraumatic stress disorder, cannabis abuse and dependence and alcohol abuse and dependence.

In July 2009, Covington went to the emergency room with thoughts of suicide. He reported smoking marijuana and drinking alcohol. Covington was admitted for monitoring and treatment. The following day Covington denied suicidal ideation and he was discharged in stable condition. Based upon this hospitalization and routine positive drug screens, Covington was encouraged to participate in Substance Abuse Treatment Services ("SATS"). He was discharged from the program in September 2009 for refusing to attend group therapy sessions and comply with treatment regulations.

In April 2010, Covington underwent a psychiatric reassessment at the VA medical center. The psychologist confirmed Covington's prior diagnosis of depression and PTSD, but noted improvement in the management of his substance abuse issues and assessed Covington with a higher rate of functioning. Covington consistently attended medication management appointments and therapy throughout 2010 and reported he was feeling well.

The most recent medical evidence in the record documents a January 2011 visit to the VA medical center. Covington reported he was doing well and denied any pain

or discomfort. He also reported benefits from group therapy, though he admitted to drinking alcohol on several occasions.

It appears Covington underwent at least three consultative examinations during the disability application process. In March 2009, Dr. Rudolph performed a psychological assessment and confirmed Covington's diagnoses of depression, PTSD and dependence upon alcohol, marijuana and tobacco. Covington reported to Dr. Rudolph a history of depression dating back to childhood, but admitted he did not seek treatment for mental illness until the previous year. Dr. Rudolph assigned Covington a Global Assessment of Functioning ("GAF") score of 60, indicating moderate difficulties in social, occupational or school functioning.

Also in March 2009, state agency medical consultant Dr. McGowan assessed Covington's physical impairments. Dr. McGowan determined these impairments to be "non-severe," as Covington had a normal physical exam, full range of motion throughout his joints and normal corrected vision. State agency psychological consultant Dr. Shipley (Ph.D) assessed Covington's mental impairments as "non-severe."

## II. **LEGAL STANDARDS**

### A. **Standard for Proving Disability**

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A).  To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> Step One: Is the claimant currently employed;
>
> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520.  *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity.  20 C.F.R. § 404.1560 (c)(2).

### B.  Standard for Judicial Review

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation

omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. DISCUSSION

Covington claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Covington contends the ALJ erred when she: (1) determined Covington's mental impairments did not meet the criteria for Listing 12.04; (2) failed to summon a medical advisor to determine whether Covington's combined mental impairments medically equaled a Listing; (3) negatively assessed Covington's

7

credibility; and (4) failed to account for Covington's deficiencies in concentration and social functioning at Step Five.

### A. Listing 12.04 (Affective Disorders)

Covington first argues that the ALJ's denial decision was in error because "substantial psychiatric treatment and examination evidence" establish that his mental impairments met or medically equaled Listing 12.04. [Dkt. 21 at 9.] In support of this argument, Covington asserts the ALJ ignored a psychiatric evaluation from February 27, 2008 diagnosing depression with suicidal ideation and low GAF scores that indicate "total disability." [Dkt. 21 at 9-10.] Because the ALJ rejected this evidence, Covington argues, she must have only considered the evidence that favored her denial decision. The Court disagrees with this logic.

The administrative record in this case consisted of more than 1,000 pages, with about 800 pages dedicated to medical records for Covington's alleged mental and physical impairments.2 The ALJ distilled from that a summary of medical records that comprised several pages of her 19-page opinion. The fact that a single document did not appear within the ALJ's comprehensive analysis does not deem the analysis erroneous. The ALJ is not required to mention every piece of evidence but must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled, so that "as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review."

---

2 Covington challenges only the ALJ's findings with regard to his alleged mental impairments.

*Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir.2004). The Court finds ALJ fulfilled this obligation.

The Court likewise rejects Covington's argument that the ALJ erroneously disregarded his low GAF scores. To the contrary, the ALJ dedicated a paragraph of her analysis to the GAF scores, even citing the Seventh Circuit standard that GAF scores "are useful for planning treatment" but they do not "reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). She concluded that "while the claimant received relatively low GAF scores, they are not necessarily indicative of his functional limitations." [Dkt. 14-2 at 29.] The Court adds that a GAF score assessed during a severe depressive episode, such as when Covington was admitted to the hospital contemplating suicide, is not helpful in determining a claimants' overall functioning. As the Seventh Circuit has noted, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Despite Covington's assertion, the ALJ did not "arbitrarily reject" Covington's GAF scores. She examined them within the context of the complete medical record and determined they were inconsistent with the level of social functioning reflected in the record. The ALJ found Covington's mental impairments did not rise to the level of severity required to be considered "disabled" under Listing 12.04. The Court finds there is substantial evidence to support that conclusion.

9

### B. Medical Advisor

Covington next asserts the ALJ was required to summon a medical advisor to testify as to whether his mental impairments met Listing 12.04. He further argues that the ALJ should not have relied upon the opinions of the state agency physicians to the exclusion of evidence of emergency room treatment for fainting spells in 2010. The Court disagrees with both of Covington's assertions.

The ALJ did not exclusively rely upon the state agency opinions. In fact, the ALJ noted that she gave them "little weight" in her disability analysis because she believed the opinions were "overly restrictive" and failed "to adequately consider the claimant's subjective complaints." [Dkt. 14-2 at 13.] Instead, the ALJ relied upon the medical record as a whole, activities of daily living and work history. This challenge to the ALJ's finding, however, is unpersuasive either way because an opinion by a state agency physician fulfills the requirement for an expert medical opinion. State agency physicians are "highly qualified physicians" who also are experts in Social Security disability evaluation. 20 C.F.R. § 416.927(f)(2)(i). Expanding on this regulation, the court in *Barnett v. Barnhart* determined that "[l]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." 381 F.3d 664, 670 (7th Cir. 2004).

Covington further asserts that had the ALJ considered the 2010 emergency room visits, she would have determined him to be disabled. This is nothing more than

10

speculation on Covington's part. As addressed above, the fact that the ALJ did not cite a particular document in her decision does not render her analysis erroneous. The 2010 emergency room reports do not even diagnose the cause of the fainting episodes, much less connect them to Covington's alleged mental impairment. The record substantially supports the ALJ's determination that Covington did not meet or medically equal Listing 12.04.

### C. Covington's Credibility

Covington also contends the ALJ's negative credibility determination must be reversed because it is contrary to SSR 96-7p. The Court disagrees. In assessing a claimant's credibility when the allegedly disabling symptoms, such as pain, are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p, 1996 WL 374186, at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simil v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations .' " *Simila,* 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)).

Covington asserts that the ALJ erroneously rejected the GAF scores of his "treating psychiatrists," which corroborated his testimony of total disability. [Dkt. 21 at 16.] As discussed above, the ALJ reasonably diminished the significance of the low

11

GAF scores because they were inconsistent with the remainder of the medical record. In addition, the ALJ cited ample evidence supporting her conclusion that the objective evidence did not support Covington's claim of disability. For example, she noted that Covington reported to his doctor that he enjoyed woodworking and collecting and dismantling old appliances. [Dkt. 14-2 at 27.] He also testified that he did yard work and chores in the garage. [Dkt. 14-2 at 26.] She also cited Covington's work history and his report to the VA vocational rehabilitation services that he was able and wanted to work. Finally, the ALJ cited Covington's substance abuse as a factor that reflected poorly on his credibility. [Dkt. 14-2 at 28.]

Even with these limitations on Covington's credibility, the ALJ still did not dismiss his allegations of a mental impairment entirely. She states: "I find the claimant credible to the extent that he suffers from depression on a continued basis. As such, I acknowledge that he experiences poor concentration and motivation intermittently. I further find that the claimant likely experiences difficulties with social interaction due to his depression." [Dkt. 14-2 at 29.] As a result, the ALJ added nonexertional limitations to Covington's RFC to account for his mental impairments. Based upon the detailed analysis by the ALJ, the Court finds that her determination to not fully credit Covington's testimony of total disability is supported by substantial evidence.

### D. Step Five and RFC

Covington's final argument for the reversal of the ALJ's decision challenges the hypothetical question the ALJ posed to the Vocational Expert ("VE"). Specifically, Covington asserts that the hypothetical failed to account for Covington's deficiencies in

concentration and social functioning. He references the "unskilled work" limitation and the Seventh Circuit's stance that limiting claimants to "simple, repetitive tasks" can be insufficient to account for limitations in concentration, persistence and pace. *See O'Connor–Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010).

In *O'Connor–Spinner,* the Seventh Circuit explained that "moderate difficulties normally should be reflected in" the RFC and corresponding hypotheticals to the VE. *O'Connor–Spinner,* 627 F.3d at 620 (emphasis added). In that case, the ALJ determined that the claimant's depression caused moderate limitations in concentration, persistence and pace that should have been described to the VE. Here, the ALJ found that while Covington likely experiences "poor concentration and motivation intermittently," the evidentiary record indicated he was compliant with his medication regime and it was "generally successful in controlling the claimant's symptoms." [Dkt. 14-2 at 15-16.] At best, Covington established only mild limitation which the ALJ accounted for in her hypothetical by noting that he had the "mental capacity to understand, remember and follow simple instructions" and perform "simple, routine, repetitive, concrete, tangible tasks." [Dkt. 14-2 at 73.] The ALJ further noted that Covington could "sustain attention and concentration skills to carry – sufficient to carry out work-like tasks with reasonable pace and persistence." *Id.* Therefore, the Court finds the ALJ"s hypothetical accurately reflected Covington's RFC and does not require remand.

## IV. **CONCLUSION**

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial

disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Covington does not qualify for disability benefits, the Commissioner's decision is **AFFIRMED**.

Date: 09/04/2013

_____
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov